IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEROME WANT,

    Plaintiff,

    v.

WASHINGTON CO. MD GOVT.,
WASHINGTON CO. COMMISSIONERS,
ROBERT SLOCUM,
ANDREW ESHEMAN,
KEVIN CERRONE,

    Defendants.

Civil Action No.: DKC-19-2545

**MEMORANDUM OPINION**

Without being served, Defendant Washington County Board of County Commissioners ("Washington County") filed a motion to dismiss the civil complaint filed by self-represented Plaintiff Jerome Want. (ECF No. 6). Mr. Want was sent a letter by the Clerk advising that, if he did not file an opposition to the motion to dismiss, his complaint may be dismissed without further warning. (ECF No. 7). Mr. Want did not oppose the motion, but instead filed proposed summonses for service of the complaint. (ECF No. 8). The complaint, which Mr. Want filed *in forma pauperis*,[1] must be dismissed as to all named defendants, without requiring service of the complaint, for the reasons noted herein.

Mr. Want's complaint purports to assert a claim under Title II of the Americans with Disabilities Act (ADA). (ECF No. 1 at p.1, ¶ 1; pp. 10-11). Mr. Want bases his claim on allegations that "Washington County Maryland Government has violated Plaintiff's rights . . . by not providing sufficient equipment and competent drivers to meet his physical needs as a disabled

---

[1] Because he appears to be indigent, the court grants Mr. Want's motion to proceed *in forma pauperis*. (ECF No. 2).

American." (*Id*. at p. 1, ¶ 1). Mr. Want explains that he has been left "stranded for long periods of time without bus transportation," and that his "frequent complaints to county commissioners, the county transit and . . . to Andrew Eshelman, [and] Kevin Cerrone have been ignored." (*Id*). The narrative Mr. Want provides as the factual background for his claims recounts the occasions where the bus was late or did not arrive; the bus driver did not inform him he did not need to transfer to another bus; the bus stops did not have a place for him to sit; and the county encouraged smoking at bus stops where an ashtray was provided. (ECF No. 1 at pp. 2-8). He states that he has been forced to walk long distances when the bus does not arrive which is painful for him due to his back problems, which provide the basis for his disability. He adds that the discrimination against him as a disabled person includes:

    a.    persistently leaving [him] stranded
    b.    persistently not keeping to schedules in this small community with very low traffic especially when [he] rides a non rush hour periods.
    c.    by not providing sufficient buses to cover all routes
    d.    not making necessary and preventive repairs such as repairs to brakes of buses and replacing suspension systems.
    e.    not providing sufficient compensation to attract competent and committed drivers (qualitatively and quantitatively).

(ECF No. 1 at p. 11). In addition, Mr. Want states that smoking should be banned at bus stops. (*Id*).

Washington County's motion to dismiss asserts that funding of public transit is not a justiciable issue (ECF No. 6 at p. 2-3) and that the ADA does not provide for the award of compensatory or punitive damages (*id*. at p. 4-5). Washington County further states that Mr. Want's attempt to have this court "order Washington Co. MD Government to allocate $2,500,000 as additional monies for the County Transit budget" is, in essence, his attempt to allocate local, state or federal government funds. (*Id*. at 2). Defendant explains:

> County transit, including the "fixed route" system which is the subject of Plaintiff's complaint, serves the public as a whole. Funds to purchase additional buses, to make repairs, or to pay drivers, must compete, among many public concerns, with funding for safety, sanitation, schools, and streets.
>
> \*\*\*
>
> "The power to fix the fiscal policies and determine the course of the fiscal operations" within our representative system of government is set forth in Art. III, § 52 of the Maryland Constitution, which "was adopted, in large measure, to correct the haphazard system of appropriation that existed prior to 1915, which could easily lead to a deficit." *Fraternal Order of Police Montgomery Cty. Lodge 35 v. Montgomery Cty. Exec.*, 210 Md. App. 117, 131, 62 A.3d 238, 246 (2013). Locally, the public transportation system in Washington County is "under the jurisdiction of the County Commissioners." Code of the Public Local Laws of Washington County § 1-603(f). And, most importantly, funding for the County transit system is within the discretion of the Commissioners, who "may provide the money necessary to the establishment and implementation of the system." Code of the Public Local Laws of Washington County § 1-603(b). Funding by individual or judicial fiat would violate the foundational separation of powers established in our American republic.

(*Id*. at 3).

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

3

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Mr. Want's complaint fails to assert sufficient facts to state a plausible claim for the relief sought against Washington County; therefore, the unopposed motion to dismiss will be granted.

The claims against the remaining defendants are also subject to dismissal. Mr. Want's complaint was filed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), which permits an indigent litigant to commence an action in this court without prepaying the filing fee. To guard against possible abuses of this privilege, the statute requires dismissal of any claim that is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). This court is mindful, however, of its obligation to construe liberally self-represented pleadings, such as the instant complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In

evaluating such a complaint, the factual allegations are assumed to be true. *Id*. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs*., 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented."). In making this determination, "[t]he district court need not look beyond the complaint's allegations . . . . It must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989). With this standard of review in mind, Mr. Want's claims against the remaining defendants are examined below.

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id*. § 12101(b)(2). Title II of the ADA, which is at issue here, prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," *id*. § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id*. § 12132. To prevail under an ADA Title II claim, "a plaintiff must show that [he or] she was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (emphasis omitted); *see also Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016). To that end, the Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment;

5

(2) disparate impact; and (3) failure to make reasonable accommodations." *Lamone*, 813 F.3d at 503 n.5 (citing *A Helping Hand, LLC v. Baltimore*, 515 F.3d 356, 362 (4th Cir. 2008)). "'Discrimination' includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Seremeth v. Bd. of Cty. Comm'rs of Frederick*, 673 F.3d 333, 336 (4th Cir. 2012) (quoting 42 U.S.C. §12112(b)(5)(A) (from Title I's definition); citing *Paulone*, 787 F. Supp. 2d at 372 (discussing the equivalence of "reasonable accommodations" and "reasonable modifications")).

The term "reasonable accommodations," which is derived from the employment discrimination provisions of Title I of the ADA, is essentially synonymous with the term "reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," 42 U.S.C. § 12131(2), which is what Title II of the ADA requires a public entity to provide. *See, e.g.*, *Seremeth v. Bd. of Cty. Comm'rs of Frederick*, 673 F.3d 333, 336 (4th Cir. 2012) (in Title II action, noting that "'[d]iscrimination' includes 'not making reasonable accommodations….'") (quoting § 12112(b)(5)(A) (from Title I's definition); citing *Paulone v. Frederick*, 787 F. Supp. 2d 360, 372 (D. Md. 2011) (discussing the equivalence of "reasonable accommodations" and "reasonable modifications")); *Robertson v. Las Animas Sheriff's Dep't*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007) ("Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation.'"); *McGary v. Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004) ("Although Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,' these terms create identical standards.").

Pursuant to 42 U.S.C. §§ 12143, 12149, and 12164, Congress directed the U.S. Department of Transportation to promulgate regulations to implement Title II. Those regulations prohibit

public entities from "deny[ing] to any individual with a disability the opportunity to use the entity's transportation service for the general public, if the individual is capable of using that service." 49 C.F.R. § 37.5(b). Other prohibitions contained in the regulation include: requiring individuals with a disability to use designated seats if the individual does not choose to use the seat; imposing special charges on individuals with disabilities; requiring an individual with a disability to be accompanied by an attendant; and refusing or requiring anything contrary to the regulation based on insurance company conditions coverage or the absence of persons with disabilities. 49 C.F.R. § 37.5 (c)-(e) and (g).

Mr. Want's complaint fails to state a claim under Title II of the ADA. The inefficiencies in the operation of public transportation he notes do not amount to discrimination on the basis of a disability, nor are they barriers to public transportation. Rather, the problems he notes with the operation and maintenance of the buses are common problems encountered by all patrons of public transportation regardless of disability. Nothing in the complaint suggests that Mr. Want is prevented from using public transportation because of his disability, *see e.g. Ash v. Maryland Transit Admin*, 2019 WL 1129439, at *3–4 (D. Md. Mar. 12, 2019) (concerning refusal by bus drivers to allow wheelchair-bound patron's entry onto buses). Mr. Want's assertions that the failure of bus drivers to arrive at bus stops on time and forcing him to wait long periods of time are unrelated to the type of disability discrimination prohibited by the ADA. There is nothing in the statute or the regulations implementing rules governing public transportation that requires that buses must be operated efficiently and arrive in a timely manner. Nor is there a basis for his allegation that the bus drivers being incompetent amounts to disability discrimination under the ADA. Thus, Mr. Want's ADA claim must be dismissed.

The remaining claims raised in the complaint are: "Non-feasanse/ Malfeasance/ Misfeasance" (ECF No. 1 at p. 12); "Breach of Fiduciary Duty: 29 US Code § 1109" (*id.*); "Willful Negligence" (*id.* at p. 13); "Retaliation: Violation of 42 US Code § 12203" (*id.*); intentional infliction of emotional distress (*id.* at p. 14); breach of contract (*id.* at pp. 14-15); and defamation (*id.* at p. 15). The two federal statutes cited by Mr. Want do not bestow upon him a cause of action for the conduct alleged. Title 29 U.S.C. § 1109 pertains to a breach of fiduciary duty in the context of an Employee Retirement Income Security Program. There are no facts alleged that would implicate that provision.

The retaliation referenced in 42 U.S.C. § 12203(a) prohibits discrimination against "any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." The sole basis for this claim as it relates to Mr. Want[2] is that he became angry when a certain bus driver did not complete his route on time; he called Mr. Eshelman's voice mail notifying him of the situation but nothing was done; the bus driver complained about Mr. Want's behavior; and the Washington County attorney sent Mr. Want a cautionary letter regarding abusive phone calls. (ECF No. 1 at pp. 13-14, *see also* ECF No. 1-6 at p. 1).[3] Again, the failure of a bus driver to arrive at a bus stop in a timely manner is not a violation of Title II of the ADA. Any adverse consequences that befell Mr. Want following his

---

[2] Mr. Want recounts other incidents in which he was involved that occurred on buses with other passengers and the bus drivers but none of those incidents amounts to retaliation as prohibited by this section of the ADA. (*See* ECF No. 1 at pp. 8-10).

[3] Mr. Want characterizes the County Attorney's letter as a threat to have him arrested (ECF No. 1 at p.14), however a review of the letter reveals it contains no such threat. (ECF No. 1-6 at p. 1).

phone calls were not the result of retaliation against him for reporting a violation of the ADA as no such violation occurred.

The remaining claims raised are, at best, state law claims that may only be heard in this court under its diversity jurisdiction. Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). They "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Diversity jurisdiction applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Mr. Want and the named Defendants reside in Maryland, therefore diversity jurisdiction over the state law claims raised does not exist. Those claims will be dismissed without prejudice.[4]

A separate Order follows.

December 18, 2019 _____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[4] In dismissing these claims without prejudice this court makes no observation regarding the merits of the claims asserted.